NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CINDY L., DAVID L., *Appellants,*

*v.*

DEPARTMENT OF CHILD SAFETY, A.M., C.M., M.M., A.L., *Appellees.*

No. 1 CA-JV 14-0105
FILED 11-25-2014

Appeal from the Superior Court in Maricopa County
No. JD510126
The Honorable Brian K. Ishikawa, Judge

**AFFIRMED**

COUNSEL

Law Office of Anne M. Williams, P.C., Mesa
By Anne M. Williams
*Counsel for Appellant Mother*

Denise L. Carroll, Esq., Scottsdale
By Denise L. Carroll
*Counsel for Appellant Father*

Arizona Attorney General's Office, Mesa
By Eric K. Knobloch
*Counsel for Appellee Department of Child Safety*

### MEMORANDUM DECISION

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Patricia A. Orozco and Judge Randall M. Howe joined.

**P O R T L E Y**, Judge:

**¶1**        Cindy L. ("Mother") appeals the order terminating her parental rights to her four minor children, A.M., C.M., M.M., and A.L.[1] Specifically, she argues that the juvenile court erred when it found that: (1) the Arizona Department of Economic Security[2] ("the Department") made diligent efforts to provide appropriate family reunification services for all four of her children; and (2) termination was in A.L.'s best interests. Likewise, David L. ("Father") appeals the order terminating his parental rights to his child, A.L. He argues that the juvenile court erred by finding that termination was in his child's best interests. For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        The Department became involved with the family in August 2011 after receiving a report of abuse concerning A.L. After an investigation, the Department referred the family for in-home family preservation services, but, in April 2012, the services were closed out because of a lack of progress. Around the same time, the Department received new reports of abuse, and the children were removed.

**¶3**        The Department filed a petition alleging that the children were dependent. Specifically, the Department alleged that Mother was unable to parent because she abused or failed to protect them from abuse, and she neglected the children by failing to address their special needs. The parties went to mediation and, although they did not resolve the allegations of dependency, they agreed the case plan would be family reunification.

---

[1] A.M. was born in 2002, C.M. in 2003, M.M. in 2008 and A.L. in 2010. The biological father of A.M., C.M., and M.M. had his parental rights terminated but is not a party to this appeal.

[2] The Department of Child Safety has replaced Arizona Department of Economic Security. We will refer to the agency as "the Department."

There was a trial on the dependency allegations and the juvenile court found the children dependent because the parents had neglected or willfully abused a child as defined by Arizona Revised Statutes ("A.R.S.") sections 8-533(B)(2) and 8-201(2)(a),[3] and the court changed the case plan to severance and adoption.

**¶4**　　　　The Department subsequently moved to terminate the parents' parental rights for child neglect.[4]  The juvenile court found that the Department demonstrated by clear and convincing evidence that:  the parents neglected the children; they could not parent the children in the indeterminate future; and the children had been out of their care for fifteen months or more and the parents had not remedied the reasons that caused the children to be in an out-of-home placement.  The court also found that the Department diligently tried to provide reunification services and that termination was in the children's best interests.  Both parents appealed, and we have jurisdiction pursuant to A.R.S. §§ 8–235(A), 12–120.21(A)(1), and –2101(B).

**DISCUSSION**

**¶5**　　　　To terminate parental rights, a juvenile court must find, by clear and convincing evidence, at least one statutory basis under A.R.S. § 8–533(B), and it must find, by a preponderance of the evidence, that termination is in the child's best interests. *Kent K. v. Bobby M.,* 210 Ariz. 279, 284, ¶ 22, 110 P.3d 1013, 1018 (2005).  "We view the facts in the light most favorable to upholding the juvenile court's order." *Ariz. Dep't of Econ. Sec. v. Matthew L.,* 223 Ariz. 547, 549, ¶ 7, 225 P.3d 604, 606 (App. 2010).  "[W]e will affirm a severance order unless it is clearly erroneous," and "we will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings[.]" *Jesus M. v. Ariz. Dep't of Econ. Sec.,* 203 Ariz. 278, 280, ¶ 4, 53 P.3d 203, 205 (App. 2002) (citations omitted).

---

[3] We cite to the current version of the statute unless otherwise noted.

[4] The Department amended the motions for termination by adding grounds under A.R.S. § 8-533(B)(8)(a) and (c) for nine- and fifteen-months' out-of-home care.

## I.    Reasonable and diligent efforts to reunify the family[5]

¶6       Mother argues that the juvenile court abused its discretion in finding that the Department made diligent efforts to provide her with appropriate reunification services to address the challenges of parenting special needs children.[6]  We disagree.

¶7       Before terminating a parent's rights under § 8-533(B)(8), the Department must make a diligent effort to provide appropriate reunification services.  A.R.S. § 8-533(B)(8).  The Department fulfills the statutory requirement when it provides the parent "the time and opportunity to participate in programs designed to help [him or her] become an effective parent[.]"  *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353, 884 P.2d 234, 239 (App. 1994).  Moreover, the Department does not have to provide "every conceivable service or to ensure that a parent participates in each service it offers."  *Id.*  Nor does it have to undertake futile rehabilitation measures. *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34, 971 P.2d 1046, 1053 (App. 1999).

¶8       Here, the Department not only provided Mother in-home family preservation services before the children were removed, but after removal she was offered the following services:  a psychological evaluation; psychological consulting; counseling; parent education; and parent-aide services during supervised visits.   Moreover, the plan focused on developing parenting skills, sign language communication skills, and ensuring that the children got physical and occupational therapy.  Although Mother participated in her psychological evaluation, she attempted but was unsuccessful in parent-aid services, and did not

---

[5] The Department contends that Mother waived this argument by failing to timely raise the issue in the juvenile court.  But Mother raised the argument in her closing statement at the termination hearing.  *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 179, ¶¶ 17-18, 319 P.3d 236, 241 (App. 2014) (noting that parent waived right to challenge the Department's reasonable efforts to provide family reunification services when the parent failed to raise the argument at the review hearings or at the termination hearing).

[6] A.M., C.M., and M.M., are special needs children with significant developmental delays.  For example, when services started A.M. and C.M. only knew a few words in sign language, and all four children could not speak.  Furthermore, A.M. and C.M. were unstable on their feet, M.M. "scooted on the floor[,]" and A.L. could not walk.

participate in the other services designed for family reunification before or after the children were removed from her care.

¶9 Mother contends, however, that the Department should have provided her with more time to complete the services because the children's special needs made reunification more difficult. We disagree.

¶10 The Department offered in-home family reunification services through the Arizona Partnership for Children ("APC") to help Mother develop her parenting skills and sign language communication. The Department also offered physical and occupational therapy for the children. But throughout the year-long in-home service program, Mother "[was] minimally engaging." For instance, Mother never scheduled the in-home occupational or physical therapy. She only took the children to one physical therapy session, and she failed to enroll any of the children in occupational therapy. Almost a year after Mother started the program, an APC in-home services specialist stated that she "ha[d] not observed the parents able to communicate with [the] children any more than they could when In Home Services began."

¶11 Even after the Department removed the children and placed them in foster care, Mother remained unwilling for the next twenty-four months to participate in the services designed to help her parent. Therefore, the juvenile court did not abuse its discretion in finding that the Department provided reasonable and diligent efforts to reunify the family, and that she will be unable to parent in the near future. *See* A.R.S. § 8-533(B)(8)(c).

## II. A.L.'s best interests

¶12 Mother and Father argue that the juvenile court erred by finding that severance was in A.L.'s best interests.[7] Once the court finds a statutory ground to terminate a parent's rights, the court must also find by a preponderance of the evidence that severance is in the child's best interests. *See* A.R.S. § 8–533(B); *Kent K.*, 210 Ariz. at 284, ¶ 22, 110 P.3d at 1018. The Department may prove that severance is in the child's best interests in one of two ways: (1) if the child is in an adoptive placement or, if not, if the child is adoptable and the current placement is meeting the child's needs, *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 30,

---

[7] In her opening brief, Mother concedes that A.M., C.M., and M.M. would benefit from severance. Moreover, the record demonstrates that the children are thriving in foster care.

231 P.3d 377, 383 (App. 2010) (citations omitted); or (2) the Department may submit evidence showing that a child would benefit from termination or would be harmed by a continuing relationship with the parent, *id.* (citation omitted).

**¶13**     Here, the juvenile court found that A.L. would benefit because A.L. was adoptable and in a prospective adoptive placement that was meeting the child's needs.    Additionally, the court found by a preponderance of the evidence that severance would benefit A.L. because, "it will allow [A.L.] to gain permanency through adoption."

**¶14**     Mother and Father also argue that they have bonded to A.L., so severance would not be in A.L.'s best interests.  But a bond between a child and his or her biological parent does not prevent a court from finding that termination is in the child's best interests.  *See Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 351, ¶ 30, 312 P.3d 861, 867 (App. 2013); *see also Kent K.*, 210 Ariz. at 287, ¶ 37, 110 P.3d at 1021 (the focus is on the best interests of the child and not on those of the parent).   The record demonstrates that reasonable evidence supports the juvenile court's findings.  Consequently, the juvenile court did not err in finding that severance was in A.L.'s best interests.

## CONCLUSION

**¶15**     For the foregoing reasons, we affirm.



Ruth A. Willingham · Clerk of the Court
F I L E D : gsh